Gilmore, J.
There are a number of errors assigned on the record, upon which the plaintiff in error asks a reversal of the proceedings and sentence against him in the court below.
It will be necessary to notice only the first three assigned, which are substantially:
1. That the facts stated in the indictment do not constitute an offense.
2. That the court erred in its charge to the jury on the question of venue.
3. That the court erred in its charge to the jury on the question of the value of the goods.
Two objections are urged to the indictment: First. That •the owner of the goods alleged to have been fraudulently obtained is an incorporated company, and therefore not a “ person,” within the meaning of the statute.
In support of this proposition two cases are cited. One—Blair v. Worley, 1 Scam. 178 — decides that a statute giving the right to remove fences made by mistake upon the lands of other persons, applies only to natural persons, and not to the United States or the State of Illinois. The other—Betts v. Menard, 1 Breese, 395 — decides that the ferry law does not authorize a county court to grant a license to ferry to a corporation, giving as one, among other reasons, that the law requires that the party receiving the grant shall give bond, etc, “ conditioned that he, she, or they will keep the ferry according to law.” The terms used in the statutes referred to in these cases respectively, exclude the idea that corporations were intended to be included.
But it is insisted that the rule of strict construction in this respect, must be applied in this case, and that the crime “can only be committed by a ‘person’ against the *224 property of another ‘person,’ who must be in either case a natural person.”
It is well settled that the rule of strict construction is not violated by giving the words of a statute a reasonable meaning according to the sense in which they were intended, and that captious objections must be disregarded. G-uided by this rule, let us ascertain in what sense the legislature used the words any other person, in the statute under which the defendant is indicted; and in this we will be aided by observing another rule of construction, in connection with it, which is, that where a clause, susceptible of two meanings, is used in a statute which has received a judicial construction, and the same clause is used in a subsequent statute, upon the same or an analogous subject, it is to be understood in the latter in the same sense as in the former, unless the object to which it is applied, or the connection in which it stands, requires it to be differently understood in the two statutes.
This statute, and. those punishing larceny, are not only analogous in the nature of the offenses made punishable and the degrees of punishment, but with the word “person ” understood, as it must be, after the phrase property of another, as used in the larceny acts, they are identical in respect to the persons against whom these offenses may be committed; and our courts have always held that it is-larceny to steal the goods or moneys of a corporation.
Again, the 12th section of the crimes act provides against burning or causing to be burned the dwelling-house, store-house, warehouse, etc., the property of any other-person, etc. This is the same phrase used in the “false pretense statute;” and this court sustained an indictment, against A. for procuring H. to burn a warehouse, the property of an incorporated railroad company. Allen v. The State, 10 Ohio St. 287.
Again, the criminal code of Ohio, section 227, provides-that the word “ person” includes a corporation as well as a natural person. This only prescribes the rule in criminal practice on this subject; but, under the rules of construe *225 tion, it may properly be regarded as an indication of legislative intent on this point, in the passage of criminal laws since the adoption of the code.
Taking all these in connection with the fact that the statute making it criminal to obtain goods by false pretenses, has been passed since the adoption of the code, and since the larceny and arson statutes have received the judicial constructions above indicated on the point under consideration, and applying the rules of construction above stated,'we hold that the word “ person,” as used in the statute, includes artificial as well as natural persons.
The second objection is, that it is not averred in the indictment that the owner relied upon the false pretenses and representations, and was induced by means thereof to part with his property.
We have been referred to quite a number of authorities-supposed to support this objection, which, on examination, are found not to do so.
Two questions are discussed in them. Eirst, as to whether the offenses charged, were within the statute, of which no notice need be taken ; and second, whether the indictment in the ease then under consideration was good. And in not a single case examined, is it found that an indictment otherwise good, was held bad for want of the averment in-question. Eor example, we take the case of The State v. Philbrick, 31 Maine, 401, which is claimed by counsel to be directly in point.
The alleged false representations in this case were made by Philbriek to Goff, the prosecuting witness, in reference to the age and value of a mare he was attempting to exchange for a horse owned by Goff.
The court, in deciding the case, said: “ The former part of this indictment alleges that the accused by false pretenses intended to cheat and defraud Goff, and proposed to exchange his mare for the horse of Goff; but there is no averment that such an exchange was made, or that the false *226 pretenses were made with a view or design to effect such ■an exchange.”
It is true that Jhe court, in holding the indictment bad, did remark, in substance, that it was not averred that the prosecuting witness relied upon the representations of the defendant; but it is apparent that the indictment, in other respects, was so defective, that the additional allegation would not have cured it. Similar remarks were made by the court in disposing of the case of the Commonwealth v. Strain, 10 Met. 521, which is also cited. This was a case in which it was alleged that the defendant had made certain false representations concerning a watch, to the prosecuting witness, Blake, whereby he obtained thirty-five dollars from the latter. The court said : “ The case at bar, if confined in its proof on the trial by the jury to the mere ■allegations of the indictment, would be certainly quite bald. The indictment does not allege any bargain, nor any colloquium as to a bargain for a watch, nor any proposition of Blake to buy, or the defendant to sell a watch, nor any delivery of the watch as to which the false pretenses were made into the possession of Blake as a consideration for the money he paid the defendant.” The averment contended for would not have cured this indictment. These illustrate the nature of the questions, in most of the cases referred to on this point.
Our statute is substantially a transcript of the act of 30 Geo. 2, c. 24, and the indictment in this case follows the English precedents under it, omitting none of the material averments. It sets out with particularity the facts and representations made by the defendant and alleged to be false; that they were made with the intent to induce the owner to deliver the goods to him; that his intent was fraudulent, and his purpose was to cheat the owner; and that by means of these false pretenses he did obtain the goods, etc. The truth of these pretenses is denied. It will be seen that the defendant was fully advised of the nature and extent of the charges against him. The facts stated in the indictment are such, that if admitted to be true, it would be clear that *227 the- owner did rely upon them in parting with its goods. This indictment is good, therefore, in this respect.
2. The court erred in its charge on the question of venue. The bill of exceptions shows that the defendant resided in Springfield, Clark county, and the sewer-pipe company was located and doing business at Akron, Summit county, ■Ohio. The goods were obtained by a letter containing the alleged false representations, accompanied by an order in this language: “ You may ship me via frt line,” etc. The Cleveland, Mt. Vernon and Columbus Railroad was doing a freight business between Springfield and Akron. The day after the letter and order were received at Akron by the company, it delivered the goods ordered as above, at the freight depot at Akron, of the railroad above named? billed, consigned, and to be shipped by the railroad company to the defendant at Springfield, Ohio, at his risk and cost for freight, Upon this state of facts the court charged the jury as follows: “ If said letter so written and sent by the defendant to the said Akron Sewer-pipe Company, was prepared and written by him at Springfield, in Clark county, Ohio, and by him mailed at Springfield to said company at Akron, Summit county, Ohio, and was by said company received at Akron, in Summit county, Ohio, where said company had their goods and did business, and said company, in pursuance of the terms of said letter, shipped said goods at Akron, in Summit county, by railroad freight line, to the defendant at Springfield, Ohio, and that said railroad line at Akron received said goods from said company, consigned to defendant at Springfield, and brought said goods on railroad to Springfield and there delivered them to the defendant, and the defendant first obtained actual possession at Springfield by the delivery of the goods by the railroad company to him there, and if the jury should also find against the defendant upon the matter of said false pretenses as alleged in the indictment, then the jury may legally find that the said offense charged was committed in Clark county, Ohio.” Exceptions were saved to this part of the charge, and are assigned for error.
*228 On the facts as above stated, the weight of authority is clearly, that the railroad company was the agent of the defendant for receiving the goods for him at Akron, and carrying-them to him at Springfield, and the delivery of the goods to it, by the sewer-pipe company, was, in legal contemplation, a delivery of the goods to the defendant at Akron. The title passed to the defendant, subject only to the sewer-pipe company’s right of stoppage in transitu. The defendant obtained actual possession of the goods at Springfield, from his agent, whose possession was his own, and not from the sewer-pipe company. Only one delivery could be made, and that had been previously completed at Akron. The legal fiction in larceny (where the owner does not part with the title to his property), that there is a new taking and carrying away in every county into which the thief may carry stolen goods, does not apply in this case, where the owner did voluntarily part with the title to the goods in question. The offense was therefore committed and completed in Summit county, and could only have been legally prosecuted there.'
There was error in the charge of the court in this respect, for which the judgment must be reversed.
3. As to the value of the goods.
The court properly instructed the jury to find the market value of the goods at Akron, when they were placed on the cars, consigned to the defendant at Springfield. If this court had found, however, that there was no obtaining of the goods by the defendant till they reached Springfield, then the title would not have passed till such delivery, and the-value of the goods, at the time and place that the delivery was made, is where and when the value should have been ascertained. This court having found that the offense was-committed in Summit county, the charge was correct in reference to the finding of the value of the goods.

Judgment reversed, and cause remanded to Clark Common Pleas.

McIlvaine, C. J., and Welch, White, and Rex, JJ., concurred.